Good morning. Good morning, Your Honors. May I please the Court? Daniel Sean, on behalf of Appellant Paul G., I'd like to reserve two minutes for rebuttal. I'll make sure to watch the clock and safeguard my time. The central question in this case is whether or not Paul G. had to exhaust his administrative remedies in order to pursue non-IDEA remedies under non-IDEA causes of action against the California Department of Education. The CDE was dismissed from the underlying due process case by their own motion, and in that motion the administrative law judge specifically noted that the type of relief we are attempting to seek was outside the jurisdiction of the hearing office. At the lower level, the district court also agreed with us that the damages we were seeking were also not available under the IDEA. Mr. Counsel, I get those points. But under the Fry case, the Supreme Court's case, they gave us a three-part test, three questions that we need to ask to determine whether the IDEA is really the underlying issue here. And as I look at the three questions and apply them to this circumstance, it seems to me that in each case the IDEA is involved. It's clearly a something that was the underlying basis. Why is that wrong? Well, Your Honor, if you look at footnote 4 of Fry, which follows the cite to Payne, which is a decision from this very court, the Supreme Court specifically notes that they are not addressing the issue of whether or not exhaustion is required in the situation where a parent is pursuing damages, i.e., remedies not available under the IDEA, and that they would save that question for another day. So the proper analysis to Paul G.'s case is under the Payne case. And if we look at Payne, Payne is very clear on its face. Payne held, quote, non-IDEA claims that do not seek relief available under the IDEA are not subject to the exhaustion requirement, even if they allege injuries that could conceivably have been redressed by the IDEA, end quote. Payne made it very clear, so long as you're pursuing remedies outside of what an administrative law judge can order under causes of action that are unrelated to the IDEA, exhaustion is not required. Well, let me ask you this. How could Paul have brought his claims against a public facility that was not a school district? I'm sorry. I'm not following the question. In other words, his claim is fundamentally educational, right? That's he was he wanted special educational in a particular residential setting. No, Your Honor. That's not accurate. Okay. In July of 2015, through the IEP process, the school district and Paul's parents determined that the proper schoolhouse for Paul was a residential treatment center. Okay. Paul was never able to access or I shouldn't say that. For a period of time, Paul was not able to access any sort of schoolhouse within the State of California. And subsequent to that period of time, he had to leave the state in order to access his schoolhouse. That's an issue of equal access. We're not challenging the quality of the services in that document. And Fry makes that very clear. I mean, that is the point of Fry. Fry articulated three clues, not a bright line rule, but clues to help guide courts in the right direction. And what Fry says is the distinction is between a challenge to the quality of the IEP versus issues of equal access. So is it your position that the state had an obligation to build a residential facility for Paul alone? No, Your Honor. I think that would be rather problematic. I agree. But isn't that what he was asking for? No, Your Honor. What we're asking for is for the state to do something. They did nothing. What? To intervene in a very novel and tricky situation where we had a boy who couldn't leave the State of California to access his schoolhouse. Wait a minute. He got a ruling that he was entitled to residential placement, right? He went to a resident — he had a residential placement. Is that correct? And he didn't like it? No, that's not accurate. Or at that, he got homesick and he — No, no, no. That's not accurate. No? Okay. You tell me what happened. From July of 2015, when his school district determined that the proper schoolhouse for Paul was a residential treatment center. Right. He was not allowed to leave the State until February of 2016. During that time, he had no access to any schoolhouse whatsoever because no such placement exists in the State of California. During that period of time, we engaged, as well as the school district did, engaged the CDE to participate in the process to figure out how to resolve this issue, how to get Paul to school. And there were certainly a plethora of options that we could have sent out. And that was all appropriate, wasn't it? I mean, that wasn't a — you're not alleging that that was a violation of the statute? I'm not sure I understand the question, Your Honor. There are discussions about what to do. No, that was certainly appropriate. Yeah. The issue, the deliberate indifference on behalf of the CDE was the refusal to engage in that process as the State education agency. We believe the IDEA, specifically Section 1413 Subdivision G, specifies in the event that a local education agency, a school district, cannot provide a service or refuses to, the State is supposed to step in to help address that particular situation. So could you compel the legislature to pass a bill for Paul? Hopefully. I mean, perhaps that's the thing to look at next. But at this point, that's not the issue currently before the Court. But under your construction of the statute, that certainly would be within the contemplation of the Federal Government, right? They've got to remedy it some way, so let's do whatever the State needs to do. You're just guessing that this State educational institution was the right one, right? Which State education? There isn't one. Well, no, no, no. But you sued the one that dropped out. Let's see here. I want to be sure of my facts here. You sued the local school district, but you also sued the State, and the State says we're not involved, right? The State? Correct. At the administrative level, we filed against both the school district and the CDE. And that's the CDE? The CDE was dismissed out. At that point, we believed we had exhausted our administrative remedies, and then we proceeded to bring claims under non-IDEA causes of action seeking relief unavailable under the IDEA, and that squarely falls within the purview of pain. Exhaustion is not required. Our case should not have been dismissed out on an exhaustion issue. Let's just say, arguendo, let's say you're right. What happens now? With respect to what? Your case. Well, if our case goes back down, then we'll deal with the issue of the violations that we raised, the civil rights violations that deal with the period of time that he was shipped halfway across the United States in order to access the schoolhouse. But I thought the real problem here was that there was not available in California the kind of placement that he needed. That's absolutely correct. And that is incredibly impactful for adult special education students. Let me explain why. Because when you get shipped out of State, you lose your State benefits. So, for example, in Paul's case, Medi-Cal was a big issue. His parents had to privately pay for his med management, which would have been paid for had he stayed in the State of California. Conservatorships are a big issue for our adult population. Okay. So he eventually was shipped out of the State to a residential placement. That's correct. So what you're seeking ultimately is damages for those expenses incurred before that was resolved? That's part of it, Your Honor, as well as the pain and suffering. This is a young boy with autism who was isolated and not provided the social exposure that we would want him to be accessed. But ultimately, what you wanted was an in-State placement. Ultimately, what we want is policy to address the State education's responsibility to intervene in these unique situations and help alleviate the pressure on the local school district when they cannot provide a service. Well, my problem, I thought the district court's problem here was that you never got any kind of remedy under the IDEA that said he needed an in-State placement. That's correct. All you got was that he needed a residential placement. That's correct, Your Honor. So you never exhausted in order to get the program that you now say he was entitled to. The pain case stands for moving from an injury-centered approach to a relief-centered approach. The district court erred in focusing on the injury. And the judge determined that we needed an order from an administrative law judge specifying an in-State placement. However, that's quite problematic. When I go to trial in these types of cases, I have to bring evidence and proof of the availability of the remedy. I can't prove or argue for a remedy that doesn't exist. Furthermore, even if a judge did order an in-State placement, there wasn't one. So, you know, that type of relief would be completely inadequate and I believe fall under the Hoft exception to the exhaustion rule. I know I have 22 seconds left. I'd like to reserve that. Okay. I want to save that. Thank you. Okay. Good morning, Your Honors. I'm Len Garfinkel for the California Department of Education. I believe that the district court got the exhaustion analysis correct in all three parts, that exhaustion was required here, that no action of the appellant satisfied exhaustion, and that there was no exception to the requirement of exhaustion that was met. What do you make of your opponent's position that he asked for in-State residential care and it was simply not available and therefore it's basically futile to ask for anything else because the State couldn't offer it? How does that not satisfy the exhaustion issue? So, at the Office of Administrative Hearings, I believe that the argument that the student needs, if appropriate, is speculative because the judge can order what the judge sees as appropriate. If the judge thinks that the student needs a particular type of placement, thinks it should be within a certain geographic area, the judge can state what the judge thinks is necessary. Now, if the school district then said we find ourselves unable to meet that, you know, we're not finding a group home willing to accept him, then, I think this is what all the district courts who've handled these matters are saying, then maybe we have a basis for an underlying predicate for an action against the CDE because then you have an inability on the part of the district to provide a FAPE and you could make the argument that that's somehow tied to action or inaction of the CDE. But all the courts that have looked at this have said if you have no underlying finding at an administrative hearing that the student needs an in-State residential placement, there is no basis to go have an action against the CDE for a systemic remedy on that issue when you haven't identified one child who has experienced harm from that. So if the court had said this student needs an in-State residential care situation, he'll lose his Medi-Cal treatment, et cetera, et cetera, if you had that, then the exhaustion would probably be satisfied. But you're saying it didn't say that. And he had made the case for why he couldn't go to Kansas, et cetera, right? Right. What happened was the matter was settled. And so it was settled without any finding that the student was denied a FAPE or that the student needed an in-State residential placement. And, in fact, based on the settlement, there will never be a finding like that. Right. And that's what the district court was concerned about, that there was never any finding under the IDEA that he needed this in-State placement. That's right. And I think the district court also looked at remedies in a few stages. For example, the student got an IDEA remedy from the district at OAH. The student bargained for the right to pursue a second remedy when he negotiated a settlement with the district that he could continue to pursue damage claims under disability discrimination laws at the district court. And the district court pointed out a third opportunity, really, for a remedy, which was at any time when the student was placed in the out-of-State placement, the student could have brought a new case at OAH and said, you know, this placement is not meeting my needs. I really think now, based on the facts that have evolved in this out-of-State placement, I'd like to make the case for needing an in-State. But that was all settled? Is that — procedurally, I'm a little confused about what happened. At what point did that all get settled?  So the case was filed at OAH in July of 2015. According to the complaint, by November of 2015, an out-of-State placement had been identified. But because there was this pending Superior Court criminal judge's order that he couldn't leave the State, he never actually started that placement until February. That's an externality that can happen in IDEA cases. There are a myriad of things that can happen that may impact a school district's ability to follow through on what they're trying to do for the student, whether that's a student landing in Juvenile Hall or a family moving or, obviously, a variety of things. Is it your position that, given the settlement, that there really is no way that the petitioner in this case can ever satisfy the exhaustion issue that they're seeking at this point? For the claims he's bringing here, that's correct. Okay. Tell me, once again, I'm still not sure. At what point was it settled? It was settled in January, February of 2016, right around the time that the student is going to his out-of-State placement. Going to the out-of-State. Right. I did want to address the damage issue. If you read Frye and Payne together, we're looking at whether the gravamen of the complaint seeks relief for an alleged denial of FAPE. And that's exactly what happened here. Placement is a critical issue under IDEA, educational placement. And this case is about whether the student received an appropriate educational placement under the IDEA. And as far as the damage issue, as the district court pointed out, in situations where, even though damages are requested, they are clearly based on an underlying alleged denial of FAPE, exhaustion is still required. And in this case, the judge went through the analysis of what type of damages were requested, and they're really emotional distress damages related to being forced, the allegation of being forced to go out-of-State. And the judge said, according to the language in Payne, those damages follow directly from the alleged denial of FAPE. Distinguishing a type of a case, like is mentioned in Payne, where, let's say, for example, the allegation was that a teacher physically abused a student, that might be a case in which you would say, you know, those damages are really related to conduct that are not directly tied to an alleged denial of FAPE in the educational program. I want to address for a moment the Section 1413. As far as the IEP meeting, in September of 2015, while the CDE's motion to dismiss in the OAH proceeding was pending, the CDE was invited to an IEP meeting at the appellant's request. Four points on that. First of all, anything to do with Section 1413 and the IEP meeting was not raised in the OAH proceeding, and therefore, under Ninth Circuit law, cannot be raised for the first time in the district court. Second, the IDEA claim has already been settled with the district. Third, there is no requirement in law that CDE attend an IEP meeting, and there really would not be a reason for the CDE to attend an IEP meeting. And fourth, under 1413, the relevant section we're talking about, which is 1413 G1B, refers to extraordinary situations in which a State determines that a school district is unable to provide a FAPE to a student, that that might be a situation where a State needs to step in. That section, by the way, B, used to say unable or unwilling. Until 1997, the unwilling was taken out of that part in 1997. But the point here is that there was no basis in September of 2015 for the CDE to believe that this school district was unable to provide a FAPE to the student, and that, in fact, that still remains the case. We have no basis to know that the out-of-State placement did not provide a FAPE to the student. Because it hasn't been through the procedures that would decide what is a FAPE. That's correct. That's correct. Are there other questions for me, Your Honors? I do have in the brief two remaining grounds for dismissal. The district court did not dismiss them. Excuse me. Did not address them, finding that because the case was being dismissed on exhaustion grounds, she would not reach them. I have included them in the brief for completeness and because they are alternative grounds that would support a dismissal in this case. Very well. Thanks very much, counsel. Thank you. Quickly, Your Honors, I want to first address or emphasize the point that as to what FAPE was for Paul, there was no dispute between his parents and the school district. To adjudicate an issue where there was no case or controversy as to the type of school house he required makes little sense, especially in a case like this. But more importantly, there's a difference between the standard, the substantive standard under the IDEA and an issue of access as articulated in 504, Section 504 in Title II. And this Court has noted those differences in a plethora of different cases. So the determination, let's assume that the administrative law judge determined Wrap it up, if you will. We'll give you a little bit more time. Of course. Wrap it up. That Paul required an in-State placement. That does not change the analysis under Section 504 of whether or not he had access. Even in the situation if the administrative law judge determined he required an out-of-State placement, that still does not change the analysis under Section 504 because the analysis is about equal access as opposed to the FAPE standard. So there was no need to determine at the administrative level when there was no dispute between the school judge and his parents that he required pursuant to the IDEA an in-State placement. Kennedy. I think we have your point. Any other questions by my colleagues? Thanks to you both, counsel, for your argument in this case. The case just argued is submitted.
judges: Schroeder, M. Smith, Rakoff